**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

ERIC ROGERS, *an individual,*

Plaintiff, CASE NO.:

V.

FIDELITY GROUP, LLC d/b/a MOTEL 6 TAMPA FAIRGROUNDS, a Florida limited liability company, and G6 HOSPITALITY, LLC, a Delaware limited liability company,

Defendants.
______________________________________/

## COMPLAINT

Plaintiff, ERIC ROGERS, (hereinafter "Plaintiff"), sues Defendant, FIDELITY GROUP, LLC d/b/a MOTEL 6 TAMPA FAIRGROUNDS ("FIDELITY") and G6 HOSPITALITY, LLC ("MOTEL 6"), for injunctive relief, attorneys' fees, litigation costs, and damages, including but not limited to disbursements, court expenses, and other fees, pursuant, *inter alia*, to the Americans with Disabilities Act, 42 U.S.C. § 12181 ("ADA") and the ADA Accessibility Guidelines, 28 C.F.R. Part 36 (hereinafter "ADAAG"), as follows:

## INTRODUCTION

1. FIDELITY owns and operates that certain hotel known as the Motel 6 Tampa Fairgrounds, located at 9942 Adamo Drive, Tampa, FL 33619 (the "Hotel"). The Hotel is a Motel 6 franchise.

2. FIDELITY takes reservations for the Hotel through www.expedia.com ("Expedia"). FIDELITY also takes reservations though www.motel6.com ("Motel 6 Website"). MOTEL 6 has operational control over the Motel 6 Website, and on information and belief, Motel 6 hotel operators (franchises) are required to take reservations through the Motel 6 Website.

3. As of March 15, 2012, Defendants were required to ensure that all of their reservation systems, including online reservation systems (a) identify and describe accessible features of the Hotel in detail; (b) identify and describe disabled accessible features of ADA compliant guest rooms in detail; (c) permit disabled individuals to independently assess whether the Hotel and its available guestrooms meet their individual accessibility needs (by describing accessible *and inaccessible* features); and (d) allow reservations to be taken for accessible guestrooms in the same manner as for non-accessible guestrooms.[1]

4. In addition, the ADAAG, 28 C.F.R. Part 36, Sections 9.1.2 and 9, requires FIDELITY to ensure that the Hotel is equipped with the correct number of accessible guestrooms having, *inter alia*, roll-in showers and other applicable accessibility features.

5. Defendants have not complied with these requirements, as set forth herein.

6. Because of non-compliance with legal requirements, Plaintiff was excluded from Hotel services, based on his disability. After excluding Plaintiff based on disability, FIDELITY refused to issue Plaintiff a refund, and continues to retain Plaintiff's funds through today.

**JURISDICTION AND VENUE**

7. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C., §§1331, 1343, as Plaintiff's claims arise, *inter alia*, under 42 U.S.C. §12181. et seq., based upon the enumerated violations of Title III of the Americans with Disabilities Act (*see also*, 28 U.S.C. §§ 2201 and 2202).

8. This Court has personal jurisdiction over Defendants in this action. Defendants transact substantial business in this District through the Hotel (and in the case of MOTEL 6, through other hotels as well).

[1] This is a non-exclusive list of requirements imposed by 28 C.F.R. §36.302(e)(l).

9. Venue lies in this District pursuant to 28 U.S.C. §1391(a)(2), because a substantial part of the events or omissions giving rise to the claims here at issue occurred in this District; the Hotel is in this District, Plaintiff encountered Defendants' ADA violations in this District, and the injury to Plaintiff occurred in this District.

**PARTIES AND FACTUAL BACKGROUND**

10. At all times Material hereto, Plaintiff, ERIC ROGERS, was and is over the age of 18 years, *sui juris*, and a resident of Broward County, Florida. Plaintiff is a paraplegic and therefore has a qualified disability as that terms is defined by the ADA.

11. Plaintiff has friends and family in the Tampa, Florida, area, and therefore made reservations at the Hotel for the night of February 22, 2020 and made payment at the time of booking. *Plaintiff's confirmed itinerary is attached as Exhibit "A."*

12. Plaintiff wanted to reserve an accessible room, but the Hotel does not offer any accessible rooms for reservation on Expedia, and so he could not; however, the Hotel directs any person needing accessibility to provide special instructions when reserving, thus clearly indicating that accessible rooms are available at the Hotel. Plaintiff reserved based on this language.

13. Similarly, on the Motel 6 Website, no accessible rooms are available for reservation at the Hotel. However, an accessibility statement is provided, affirmatively advising that there are accessible rooms, and an accessible route to accessible rooms.

14. Plaintiff called the Hotel ahead of his arrival, to inform the Hotel that he would be checking in late, and that he needs an accessible room.

15. Plaintiff was then informed that the Hotel has no accessible rooms at all. Moreover, Plaintiff was told that there was not even any room reachable by wheelchair available for that night. At that point, Plaintiff was in Tampa without lodging for the night, and Defendant was

holding onto his money. Plaintiff requested a refund and was told that his payment was non-refundable.

16. Plaintiff then physically went to the Hotel to explain the severity of the situation, and to demand a refund. Plaintiff was again told (this time in person) that there were no rooms that could accommodate him in a wheelchair, that his reservation was non-refundable and that he would not be getting any refund. Plaintiff was eventually able to speak with a manger who promised him a refund. But through today, that refund has never been issued.

17. FIDELITY is a FLORIDA LIMITED LIABILITY COMPANY authorized to do and doing business in the State of Florida, and in this District.

18. MOTEL 6 is s DELAWARE LIMITED LIABILITY COMPANY authorized to do and doing business in the State of Florida, and in this District.

**COUNT I – VIOLATION OF ADA ARCHTECTURAL REQUIREMENTS**
**(AS TO FIDELITY ONLY)**

19. On July 26, 1990, Congress enacted the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

20. Congress specifically found, *inter alia*, that:[2]

a. Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

---

[2] 42 U.S.C. § 12101(a)(1) – (3), (5), and (9).

c. Discrimination against individuals with disabilities persists in such critical areas of employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

d. Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and,

e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

21. Congress explicitly set forth the purpose of the ADA; to wit:[3]

(i) Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii) Provide a clear, strong, consistent, enforceable standard addressing discrimination against individuals with disabilities; and,

(iii) Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

[3] 42 U.S.C. § 12101(b) (1) (2) and (4).

22. The congressional legislation gave places of public accommodation a time period of up to one and a half years from the enactment of the ADA to implement the requirements imposed by the ADA.

23. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000.00 or less).[4]

24. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of Attorney General, promulgated federal regulations to implement the requirements of the ADA (the "ADAAG").[5]

25. Upon information and belief, the Hotel has begun operations, and/or has undergone substantial remodeling, repairs and/or alterations since January 26, 1992, and/or has sufficient income to make readily achievable accessibility modifications.

26. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000.00 or less).[6]

27. The Hotel is legally required to be, but is not, in compliance with the ADA and ADAAG.

28. Such non-compliance includes but is not limited to the following issues: Failure to provide the correct number of accessible guestrooms (or in this case, any accessible guestrooms) outfitted with the required accessibility features, in violation of 20 C.F.R. Part 36, Section 9.

---

[4] 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).
[5] 29 C.F.R. Part 36.
[6] 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

29. This is not intended as a complete list of ADA and ADAAG violations at the Hotel. Additional violations will be set forth within Plaintiff's expert disclosures and report, following inspection made pursuant to Fed. R. Civ. P. 34.

30. These violations, which include but are not limited to those enumerated herein, prohibit Plaintiff from staying at the Hotel, and accessing the goods, services, facilities, privileges, advantages and/or accommodations offered therein.

31. Remediating the ADA and ADAAG violations set forth in this Count I is both technically feasible and readily achievable.

32. Plaintiff intends to visit the Hotel again in the future in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations offered at the Hotel, if it is accessible to him; however, in light of his disabilities, unless and until the Hotel is brought into full compliance with the ADA and its implementing regulations, Plaintiff will remain unable to fully, properly, and safely access and stay at the Hotel, or benefit from the goods, services, facilities, privileges, advantages and/or accommodations offered therein.

**COUNT II – VIOLATION OF ADA RESERVATION SYSTEM REQUIREMENTS (AS TO ALL DEFENDANTS)**

33. Pursuant to the mandates of 42 U.S.C. §12134(a), on September 15, 2010, the Department of Justice, Office of the Attorney General ("DOJ"), published revised regulations for Title III of the Americans With Disabilities Act of 1990. Public accommodations, including places of lodging were required to conform to these revised regulations on or before March 15, 2012.

34. On March 15, 2012, the revised regulations implementing Title III of the ADA took effect, imposing significant new obligations on inns, motels, hotels and other "places of lodging." 28 C.F.R. §36.302(e)(l) provides that:

> Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations ***made by any means***, including by telephone, in-person, or through a third party –
>
> (i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
>
> (ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;
>
> (iii) Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;
>
> (iv) Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and
>
> (v) Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.

35. In promulgating the new requirements, the Department of Justice made clear that individuals with disabilities should be able to reserve hotel rooms with the same efficiency, immediacy, and convenience as those who do not need accessible guestrooms. *28 C.F.R. Part 36, Appx. A.*

36. Hotels (and motels) are required to identify and describe all accessible features in the hotel and guestrooms; "[t]his requirement is essential to ensure individuals with disabilities receive

information they need to benefit from the services offered by the place of lodging." *28 C.F.R. Part 36, Appx. A.* Moreover, "a public accommodation's designation of a guestroom as "accessible" does not ensure necessarily that the room complies with all of the 1991 Standards." *28 C.F.R. Part 36, Appx. A.* Labeling a guestroom as "accessible" or "ADA" is not sufficient.

37. In addition,

> hotel rooms that are in full compliance with current standards may differ, and individuals with disabilities must be able to ascertain which features – in new and existing facilities – are included in the hotel's accessible guest rooms. For example, under certain circumstances, an accessible hotel bathroom may meet accessibility requirements with either a bathtub or a roll in shower. The presence or absence of particular accessible features such as these may mean the difference between a room that is usable by a particular person with a disability and one that is not.

*28 C.F.R. Part 36, Appx. A.* Accordingly, Defendant is required to set forth specific accessible features and not merely recite that a guestroom is "accessible" or "ADA" or list accessibility features that may (or may not) be offered within a particular room.

38. For hotels in buildings constructed after the effective date of the 1991 Standards, it is sufficient to advise that the hotel itself is fully ADA compliant, and for each accessible guestroom, to specify the room type, the type of accessible bathing facility in the room, and the communications features in the room. *28 C.F.R. Part 36, Appx. A.*

39. However, for hotels in buildings constructed prior to the 1991 Standards, information about the hotel should include, at a minimum

> information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms. In addition to the room information described above, these hotels should provide information about important features **that do not comply** with the 1991 Standards. For example, if the door to the "accessible" room or bathroom is narrower than required, this information should be

> included (e.g., door to guest room measures 30 inches clear). [emphasis added].

*28 .F.R. Part 36, Appx. A.*

40. FIDELITY'S Expedia page does not comply with the ADA and ADAAG. Specifically, no accessible rooms are offered for reservation whatsoever, in clear violation of the requirements set forth herein. However, because the Expedia page has language indicating that the Hotel is accessible, Plaintiff reserved in reliance on that language, intending to later advise the Hotel of his specific accessibility needs. *Plaintiff's confirmed itinerary is attached as Exhibit "A."*

41. Reservations taken on the Hotel's Motel 6 Website page, owned and/or operated by MOTEL 6, also does not allow for the reservation of any accessible rooms at the Hotel online, in clear violation of the laws set forth herein. Moreover, the Motel 6 Website affirmatively states that the Hotel has accessible rooms and has "an accessible route from accessible public entrance to accessible guestrooms." Because the Hotel has no accessible rooms, this statement goes beyond a mere failure to provide accessibility information, in that it affirmatively provides accessibility misinformation, to the obvious detriment of disabled users of the Motel 6 Website.

42. At this time, it is entirely unclear which information provided online about accessible Hotel features is true, and what is untrue, and it is therefore unclear whether and to what extent required information about accessible and inaccessible features is provided. Discovery is required on this issue, to decipher which listed accessibility features are real, which are not, and what required information remains unlisted in violation of ADA and ADAAG requirements.

43. Plaintiff will visit the Hotel's Expedia page and the Motel 6 Website again after Defendants' compliance with the laws and regulations specified herein, in order to learn about accessible (and inaccessible) features of the Hotel, learn about the accessible (and inaccessible) features of guestrooms, assess the extent to which the Hotel meets each of his specific accessibility

needs, determine whether he can reserve an accessible guestroom, reserve an accessible guestroom (if it meets his needs), and to stay at the Hotel during one or more of his visits to Tampa.

44. Defendants have discriminated against Plaintiff and all other mobility-impaired individuals, by denying full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages and accommodations offered on the websites at issue, due to the continuing ADA and ADAAG violations as set forth above.

45. Modifications to the websites at issue (and other online reservation platforms, as applicable) is accomplishable without undue burden or expense and is readily achievable. But in any event, upon information and belief, these websites have been altered, updated, and edited after 2010, but not in a manner compliant with 2010 ADAAG standards.

46. Defendants will continue to discriminate against Plaintiff and all other disabled individuals who access these websites (and other online reservation platforms, as applicable) unless and until Defendants modify the websites (and other online reservation platforms, as applicable) to set forth all required information, as set forth above.

47. Plaintiff is without an adequate remedy at law and is suffering irreparable harm, and Plaintiff reasonably anticipates that he will continue to suffer this harm unless and until Defendant is required to correct the ADA violations at issue, and to maintain the websites (and other online reservation platforms, as applicable), inclusive of the online reservation system, in a manner that is consistent with and compliant with ADA and ADAAG requirements.

48. Pursuant to 42 U.S.C. §12188(a) this Court has authority to grant injunctive relief to Plaintiff, including an Order that compels Defendants to enact policies that are consistent with the ADA and its remedial purposes, and to alter and maintain the website (and other online reservation

platforms, as applicable), and all online reservation systems, in accordance with the requirements set forth within the ADAAG Standards, 28 C.F.R. Part 36.

**COUNT III – NEGLIGENCE**
**(AS TO FIDELITY ONLY)**

49. Plaintiff re-avers the allegations set forth above as though fully set forth herein.

50. FIDELITY has violated its duties under the ADA and ADAAG, as set forth more fully hereinabove, by failing to ensure the availability of accessible rooms at its Hotel, and by failing to make accessible rooms, and accurate accessibility information, available on its Website.

51. In addition, FIDELITY'S online reservation systems provides incorrect information, clearly intended to provide the impression that the Hotel is accessible, and that accessible rooms are available upon request, even though they are not.

52. Defendant's Expedia reservation page specifically states that the Hotel takes accessibility requests. Likewise, its page on the Motel 6 Website reservation page states that the Hotel has accessible guestrooms, and an accessible route to those guestrooms.

53. Based upon FIDELITY'S representations online, Plaintiff booked a guestroom at the Hotel and paid for it. When Plaintiff later called to be sure that an accessible room would be set aside for him, he was told that the Hotel has no accessible rooms.

54. Plaintiff asked for a refund but was told that no refund would be issued. He then went to the Hotel, so that its employees could see his condition, and to demand a refund. Defendant continued to deny Plaintiff any refund. Plaintiff ultimately spoke to a manager, who agreed to a refund, but never actually refunded anything.

55. Defendant has at this point gone significantly beyond non-compliance with the ADA and has in fact taken online reservations through platforms that make affirmative misrepresentations about accessibility at the Hotel, inducing at least one person (Plaintiff) to reserve on the basis of

those misrepresentations. Defendant then refused to return money charged to Plaintiff for a reservation that was made in reliance on misrepresentations.

56. The foregoing constitutes either gross negligence or intentional misconduct.

57. Plaintiff was damaged as a result of Defendant's misconduct asset forth herein.

WHEREFORE, Plaintiff, ERIC ROGERS, respectfully requests that this Court enter judgment against Defendants, and in his favor, as follows:

a. A declaration that the Motel 6 Website is owned, leased, operated, and/or controlled by MOTEL 6 in a manner that violates the ADA, as set forth herein;

b. A declaration that FIDELITY is taking reservations through Expedia and the Motel 6 Website is a manner that violates the ADA, as set forth herein;

c. Temporary and permanent injunctive relief enjoining Defendants from continuing discriminatory practices, including the requirement that Defendants permanently implement policies, practices, procedures, including online content, consistent with the mandates of the 2010 ADAAG Standards on all online reservation platforms (and other online reservation platforms, as applicable);

d. Temporary and permanent injunctive relief enjoining Defendants from maintaining or controlling content, or accepting any reservations, on any website through which they are offering online reservations for any hotel, unless such website and online reservation system fully complies with 28 C.F.R. §36.302(e)(l);

e. An award of appropriate compensatory and/or punitive damages (Plaintiff will move to amend the Complaint to seek punitive damages) from FIDELITY on Count II of Plaintiff's Complaint;

f. An award of reasonable attorneys' fees, costs, disbursements and other expenses associated with this action, in favor of Plaintiff;

g. Such other and further relief as this Court deems just, necessary and appropriate under the circumstances.

DATED this **7th** day of **August,** 2020.

Respectfully Submitted,

LAW OFFICES OF NOLAN KLEIN
*Attorneys for Plaintiff*
5550 Glades Rd., Ste. 500
Boca Raton, FL 33431
Ph: (954) 745-0588
www.nklegal.com

By: *_/s/ Nolan Klein_*
NOLAN KLEIN, ESQUIRE
Florida Bar No. 647977
klein@nklegal.com
amy@nklegal.com